UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JTH TAX, LLC d/b/a LIBERTY TAX SERVICE,<br><br>        Plaintiff,<br> v.<br><br>AARON ORTNER AND DOODLEBUG, LTD. d/b/a FRANKLIN TAX<br><br>        Defendants. | Case No: |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

  Plaintiff JTH Tax LLC, d/b/a Liberty Tax Service ("Liberty") ("Plaintiff") alleges for its Verified Complaint against Defendants Aaron Ortner ("Ortner") and Doodlebug, LTD. d/b/a Franklin Tax ("Franklin Tax") ("Defendants"), as follows:

**NATURE OF THE ACTION**

  1. Ortner is a former Liberty franchisee who has breached franchise agreements with Liberty (collectively, "Franchise Agreements") by using Liberty's trade secrets to unlawfully compete, in open and direct violation of a two-year, 25-mile non-competition provision set forth in the Franchise Agreements.

  2. Ortner, a guarantor of the Franchise Agreements, is intentionally and deceptively operating Franklin Tax to solicit Liberty's clients and former Liberty employees using Liberty's trade secrets for his benefit, to the detriment of Liberty.

  3. Defendants' unlawful competition has resulted in, and will continue to result in, irreparable harm to Plaintiffs' brand, reputation, goodwill and franchise system. If Defendants are not ordered to cease their unlawful competition, Plaintiffs will continue to suffer irreparable harm

to its brand, reputation and franchise system that cannot be corrected by monetary damages.

4. Ortner has also breached Franchise Agreements by failing to return Liberty's confidential Operations Manual and failing to pay $9,968.31 in accounts receivable debt owed to Liberty.

5. In this action, Liberty seeks (1) an injunction prohibiting Ortner from offering tax preparation services and soliciting Liberty's customers within twenty-five (25) miles of the boundaries of his former Liberty franchise territory for two years following the entry of any injunction; (2) an injunction prohibiting Ortner and all those in concert with him, including Franklin Tax, from using Liberty's Confidential Information; (3) an immediate injunction ordering Ortner to cease use of and return Liberty's Confidential Information and Trade Secrets, including Liberty's Confidential Operations Manual, to Liberty; (4) compensatory damages for amounts due and owing by Ortner to Liberty stemming from Ortner's post-termination breaches of contract and violations of common law; (5) statutory and punitive damages stemming from Ortner's violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*. ("DTSA"); (6) attorneys' fees and costs; and (7) such other relief the Court deems necessary and just.

## THE PARTIES

6. Liberty is a Delaware limited liability company with its principal place of business at 500 Grapevine Hwy., #402, Hurst, TX 76054.

7. Ortner is a citizen of the State of Ohio, with a last known address of 20 Rosedale Blvd., Norwalk Ohio 44857.

8. Doodlebug is an Ohio Limited Liability Company with its principal place of business at 20 Rosedale Blvd., Norwalk, Ohio 44857. Ortner is the registered agent of Doodlebug.

9. Franklin Tax is registered as a business trade name for Doodlebug and is operating

a competing tax business located at 9 Franklin St., Norwalk, Ohio 44857.

## JURSIDICTION AND VENUE

10. This Court has personal jurisdiction over Ortner because he is a resident of the State of Ohio and is operating a business in violation of the Franchise Agreements' restrictive covenants in this District.

11. This Court has personal jurisdiction over Franklin Tax because Doodlebug is an Ohio entity.

12. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

13. This Court has original (federal question) subject matter jurisdiction pursuant to the DTSA, and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the DTSA claim.

14. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to claims in the action within the original subject matter jurisdiction of this Court that they form part of the same case or controversy.

15. This action is properly venued in the Northern District of Ohio pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Ortner is a resident of this judicial district, and Doodlebug is registered business located in this District and a substantial part of the events giving rise to Liberty's claims occurred within this District.

## FACTUAL BACKGROUND

16. Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including in Ohio. Liberty's busiest time of the year typically spans the months of January through April, during which time Liberty generates

approximately 90% of its annual revenue.

17. Liberty owns numerous Trade Secrets and other confidential information, including but not limited to, client lists and files, methods of operation, private customer information, and marketing strategies as well as its confidential Operations Manual, which contains Liberty's highly valuable and guarded trade secrets and confidential information (collectively, "Trade Secrets" and/or "Confidential Information").

18. Pursuant to the terms of its franchise agreements, Liberty discloses its Trade Secrets and Confidential Information to franchisees only through its confidential and proprietary Operations Manual, training manuals, training programs, and in guidance and assistance it supplies to franchisees.

**The Franchise Agreements**

19. On January 4, 2017, Ortner entered into two Franchise Agreements with Liberty for franchise territories in Sandusky (OH125) and Norwalk (OH277) (the "Franchise Territories") and ("Franchise Agreement"). A copy of the Norwalk Franchise Agreement is attached hereto as **Exhibit A**. The terms of the Sandusky and Norwalk Franchise Agreements are substantially identical, save for the franchise territories to which each agreement applies.

20. Ortner personally guaranteed the Franchise Agreements, including any promissory notes and debts due to Liberty. Ex. A § 26.

21. Ortner operated Liberty Franchise locations at 130 W. Perkins Ave. Sandusky, Ohio 44870, 1318 Cleveland Rd. W. Sandusky, Ohio, 44870 and 84 Whittlesey Ave. Unit E, Norwalk, Ohio 44857 pursuant to the Franchise Agreements.

22. Pursuant to the Franchise Agreements, Liberty granted Ortner a license to use its Trade Secrets and Confidential Information and to identify as a Liberty franchise, and provided

Ortner with training in its operation, marketing, advertising, sales, and business systems. Ortner also received a copy of Liberty's confidential operating, marketing, and advertising materials, including its confidential and proprietary Operations Manual containing Liberty's Trade Secrets, which are not available to the public or to anyone who is not part of Liberty's business system.

23. Pursuant to Section 1 of the Franchise Agreements, Ortner was authorized to use the Liberty system and Liberty trade names, service marks, and trademarks (collectively the "Marks"). The Marks are widely recognized foundations of the Liberty brand that communicate to customers that the services offered by a Liberty will be of good quality consistent with the well-respected Liberty name.

24. Pursuant to Section 4(d) and (g) of the Franchise Agreements, Ortner agreed to pay monthly royalties in the amount of 14% of gross receipts. Ex. A § 4(d) and (g).

25. Pursuant to Section 4(f) of the Franchise Agreements, Ortner agreed to pay monthly advertising fees to Liberty in the amount of 5% of gross receipts. *Id*. § 4(f).

26. Pursuant to Section 4(h) of the Franchise Agreements, interest on all amounts due and owing by Ortner to Liberty compounds daily at a rate of 12% per annum. *Id*. § 4(h).

27. Pursuant to Section 6(g) of the Franchise Agreements, Ortner was required to "use the software that Liberty provides," and agreed to not "use or have installed on computers used in the Franchised Business any other federal or state personal income tax return preparation or electronic filing software without Liberty's prior written consent." *Id*. § 6(g).

28. In Section 9(d) of the Franchise Agreements, Ortner agreed to immediately pay all amounts due and owing to Liberty upon the termination. *Id*. § 9(d).

29. Under Section 9 of the Franchise Agreements, Ortner agreed to take the following actions immediately upon termination: (1) return Liberty's confidential Operations Manual; (2)

deliver all customer lists, tax returns, files, and records to Liberty; (3) refrain from using or disclosing Liberty's Trade Secrets and Confidential Information; (4) pay to Liberty all amounts owing to Liberty, including damages, costs and expenses, including reasonable attorney's fees; and (5) adhere to all post-termination non-competition and non-solicitation covenants. *Id*. § 9.

30. In Section 10(a) of the Franchise Agreements, Ortner agreed to not directly or indirectly prepare or electronically file income tax returns or offer financial products except in his capacity as a Liberty franchisee during the term of the Franchise Agreement. *Id*. § 10(a).

31. Ortner further agreed for a period of two (2) years not to employ or solicit for employment without Liberty's consent any of Liberty's employees. *Id*. § 10(d).

32. Ortner also agreed under the Franchise Agreements "not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty…" Ex. A and Ex. B at § 10(f).

33. Under the Franchise Agreements, Ortner agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest," agreed to "waive all defenses to the strict enforcement of Section 10," and agreed that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under … Sections 9 and 10." *Id*. § 10(h).

34. Pursuant to Section 12 of the Franchise Agreements, Ortner acknowledged that Liberty's Confidential Information was to be used only in connection with his Liberty franchise, and further agreed to never use or disclose the Confidential Information following the termination or expiration of the Franchise Agreement. *Id*. at §§ 12(a) and (c).

35. The Franchise Agreements provide that Virginia law applies to all claims arising out of or in connection with the Franchise Agreements.

**Termination of the Franchise Agreements**

36. On or about April 28, 2022, Ortner informed Liberty of his election to not renew the Franchise Agreements.

37. As such, Liberty terminated the Franchise Agreements by way of a termination notice dated May 11, 2022 ("Termination Notice"). A copy of the Termination Notice is attached hereto as **Exhibit B**.

38. The Termination Notice reminded Ortner that he was bound by the post-term duties stated in the Franchise Agreements, including but not limited to his obligations to (a) refrain from directly or indirectly offering or providing tax preparation services and soliciting Liberty clients within 25 miles of his former Liberty franchise territories for two years; (b) return all Confidential Information to Liberty; and (c) pay all amounts then due and owing to Liberty.

39. As of May 2022, Ortner owed Liberty least $9,968.31 in past due accounts receivable debt. To date, Ortner has not tendered this payment to Liberty.

**Post-Termination Breaches of the Franchise Agreements**

40. On January 6, 2022, Ortner, through his entity Doodlebug, filed a trade name registration with the Ohio Secretary of State for Franklin Tax.

41. Through Franklin Tax, Ortner is actively soliciting Liberty's clients from 9 Franklin, Ave., Norwalk, Ohio, less than .2 miles from his former Liberty franchise located at 84 Whittlesey Ave. in Norwalk, Ohio, and approximately 15 miles from his former Liberty franchises located at 130 W. Perkins Ave. and 1318 Cleveland Rd. W., both in Sandusky, Ohio.

42. The property at which Ortner is operating Franklin Tax is registered to Nine Franklin, LTD., which is an Ohio Limited Liability Company owned by Ortner.

43. In late January, Liberty learned of information that caused it to suspect that Ortner was operating a competing tax business, and retained a private investigator to surveil his suspected

competing business.

44. On January 20, 2023, the private investigator retained by Liberty observed that Ortner is operating Franklin Tax within the restricted zone, and provided the following photographic evidence:

 

45. The private investigator hired to surveil Franklin Tax spoke with Ortner personally on January 20, 2023, who confirmed that Franklin Tax offers tax preparation services.

46. The investigator obtained the following business card during his inspection of Franklin Tax:



47. Ortner told the private investigator that Franklin Tax is providing its services free of charge this tax season in order to gain business going forward.

48. Indeed, Ortner placed an advertisement in a February 2023 local Norwalk Town Money Saver publication touting Franklin Tax's free services:

8



49.     Ortner is also actively soliciting his former Liberty customers through letters that tout his prior experience at Liberty. One such letter, sent to a client who has been doing business with Liberty since 2013, is attached hereto as **Exhibit C**.

50.     The letter further touts that other employees are working for Liberty Tax, including Michelle Livermore, Amy Nolan, Lori Ortner and Lyndsay McDonald. These are all former employees who Ortner was restricted from employing pursuant to § 10(d) of the Franchise Agreement.

51.     Ortner has further breached the Franchise Agreements by failing to return Liberty's confidential Operations Manual, which contains Liberty's Confidential Information and trade

9

secrets, and by failing to pay overdue accounts receivable debts owed to Liberty in the principal amount of at least $9,968.31, plus accrued and accruing interest.

52. As a result of the foregoing, Liberty has suffered pecuniary harm and irreparable harm to its reputation, goodwill, franchise system, and Confidential Information.

## COUNT I
*Breach of the Franchise Agreements*

53. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

54. The Franchise Agreements are valid and enforceable.

55. Liberty has performed all obligations required under the Franchise Agreements.

56. Ortner agreed under the Franchise Agreements that, upon termination, he would (a) return Liberty's confidential Operations Manual; (b) deliver all customer lists, customer information, tax returns, files, records and other Confidential Information to Liberty; (c) refrain from using or disclosing Liberty's Confidential Information; (d) refrain from directly or indirectly offering or providing tax preparation services and soliciting Liberty's customers within 25 miles of his former Liberty offices and territories through May 11, 2024; (e) refrain from soliciting former Liberty employees; and (f) pay all amounts due and owing to Liberty.

57. Ortner's post-termination obligations survive termination of the Franchise Agreements.

58. Ortner breached the foregoing post-termination obligations by (a) failing to return Liberty's Operations Manual; (b) retaining customer lists, information and files from their former Liberty office; (c) using and disclosing Liberty's Confidential Information in connection with the business of Franklin Tax; (d) operating Franklin Tax within 25 miles of his former Liberty franchise offices; (e) soliciting Liberty's customers; (f) soliciting former employees; and (g) failing to pay amounts due and owing to Liberty.

10

59. The foregoing breaches are material.

60. By his conduct, Ortner has violated the non-compete provisions of the Franchise Agreement and is likely to continue violating the non-compete provisions.

61. As a direct and proximate result of the foregoing breaches, Liberty has incurred, and will continue to incur, pecuniary damages, in an amount to be determined at trial.

62. As a direct and proximate result of the foregoing breaches, Liberty has suffered irreparable harm to its brand, reputation and goodwill, as well as to the value of its Confidential Information.

## COUNT II
*Violation of the Defend Trade Secrets Act of 2016*

63. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

64. The DTSA provides a private civil cause of action for misappropriation of a trade secret that is related to a product or service.

65. Liberty owns numerous Trade Secrets that implicate interstate commerce, including but not limited to, its client lists and files, as well as its confidential Operations Manual, which contains Liberty's highly valuable and guarded Trade Secrets and Confidential Information.

66. The Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

67. The Trade Secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of the franchised business pursuant to a franchise agreement.

68. Liberty's franchisees are licensed to use the Trade Secrets only pursuant to the protective terms of Liberty's Franchise Agreement, and then only in connection with the operation of a Liberty franchise.

69. Liberty has taken extensive measures to preserve and protect the Trade Secrets for the purpose of maintaining a competitive advantage, including, among other things (a) requiring franchisees such as Ortner to agree to never use the Trade Secrets for any purpose other than operating a Liberty franchise; (b) requiring franchisees like Ortner to return the confidential Operations Manual and deliver the Trade Secrets and Confidential Information to Liberty immediately upon termination or expiration of the Franchise Agreement; and (c) enforcing Liberty's interest in the Trade Secrets by permitting legal recourse against those who misappropriate the Trade Secrets.

70. Liberty disclosed the Trade Secrets to Ortner pursuant to the terms of the Franchise Agreement and for the sole purpose of his using such information to operate a Liberty franchise. The Franchise Agreement between Liberty and Ortner incorporated the protective provisions designed to deter the misuse by a franchisee of Liberty's Trade Secrets discussed above. In addition, Section 10 of the Franchise Agreement obligated Ortner to refrain from offering tax preparation services and soliciting Liberty's clients outside of the Liberty System.

71. Breaching those promises, Ortner intentionally and without Liberty's permission or authorization utilized Liberty's Trade Secrets and Confidential Information to transmit tax returns for Liberty's clients for his own financial gain and to secure a pecuniary benefit for his competing tax service, Franklin Tax.

72. In so doing, Ortner intentionally and without Liberty's permission or authorization used and/or disclosed Liberty's Trade Secrets for his own economic benefit and with the intention and knowledge that his conduct would irreparably injure Liberty's goodwill and reputation.

73. Ortner used Liberty's Trade Secrets without Liberty's permission or authorization, with knowledge that he did not have permission or authorization to use said Trade Secrets. Ortner

did so for his own economic benefit and with the knowledge that its conduct would irreparably injure Liberty's goodwill and reputation.

74. As a direct and proximate result of Ortner's willful, improper, and unlawful disclosure and use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury and financial harm, in an amount to be determined at trial.

75. Further, pursuant to 18 U.S.C. § 1836(b)(3)(A), Ortner's, actual and threatened use and misappropriation of Liberty's Trade Secrets should be enjoined from further disclosure or use of Liberty's Trade Secrets.

76. In addition, Ortner's conduct in misappropriating the Trade Secrets was and continues to be willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C), and an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D), in amounts to be determined at trial.

## COUNT III
### *Unjust Enrichment*

77. Liberty repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

78. If this Court does not award judgment against Ortner and in favor of Liberty for breach of contract, Liberty is entitled to damages under the theory of unjust enrichment.

79. Liberty conferred a benefit on Ortner by disclosing to him its Trade Secrets and Confidential Information.

80. Ortner has been enriched by his use and/or disclosure of Liberty's Trade Secrets and Confidential Information at the expense of Liberty, as well as by engaging in direct competition with Liberty, despite the non-competition provisions of the Franchise Agreement.

81. Ortner is not entitled to use or disclose the Trade Secrets and Confidential

13

Information, or to compete against Liberty by offering to clients tax preparation services outside the Liberty System.

82. It is against equity and good conscience to permit Ortner to retain all amounts in which he was enriched by virtue of his continued possession and use of Liberty's Trade Secrets and Confidential Information and from engaging in unlawful competition with Liberty.

83. Ortner accepted and retained the benefit of receiving the Trade Secrets and Confidential Information without paying for their value, and by using the information for his own benefit, to the detriment of Liberty's interests.

84. Liberty has suffered and will continue to suffer damages in amounts to be determined at trial for which Ortner is are liable, in association with his unjust enrichment.

## COUNT IV
*Conversion*

85. Liberty repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

86. Upon the termination of the Franchise Agreement, Ortner was obliged to (A) return any copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Franchised Business; (B) return any copies, including electronic copies and media, containing, customer tax returns, files, and records; and (C) return the copy of the Operations Manual and any updates thereto (collectively, "Property").

87. During the pendency of the Franchise Agreement, Ortner was allowed to use and possess Liberty's Property only while operating his former Liberty franchise in accordance with to the Franchise Agreement. Pursuant to Section 9 of the Franchise Agreement, upon termination of the Franchise Agreement, Ortner was required to transfer and deliver the Property to Liberty.

88. Ortner has not returned Liberty's Property to Liberty. Instead, Ortner has converted Liberty's Property for his financial gain through the solicitation of Liberty's customers to compete directly with Liberty. As such, Ortner is intentionally interfering with Liberty's use and enjoyment of said Property.

89. Ortner's interference with Liberty's Property has deprived Liberty of its possession and use of said Property. As a direct and proximate result of Ortner's conversion of Liberty's Property, Liberty has suffered damages and will continue to suffer damages in amounts to be determined at trial, for which Ortner is liable, until the aforementioned property is delivered and returned to Liberty.

## COUNT V
### *Unfair Competition*

90. Liberty repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

91. Liberty owns numerous Trade Secrets, including but not limited to, client lists and files, as well as its confidential Operations Manual, which contains Liberty's highly valuable and guarded Trade Secrets and Confidential Information.

92. Ortner was granted access to these Trade Secrets as a Liberty franchisee and authorized to only use the Trade Secrets through the Liberty franchise system to process tax returns.

93. Ortner has instead used Liberty's Trade Secrets and Confidential Information to file tax returns for his own purposes outside the Liberty System in order to improperly and unfairly compete with Liberty. Through his actions, Ortner has intentionally deceived Liberty's customers for his business gain.

94. As a direct and proximate result of Ortner's unlawful actions, Liberty has suffered

and will continue to suffer irreparable injury and is entitled to injunctive relief and monetary damages in amounts to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Liberty prays for judgment against Ortner as follows:

1. For the following injunctive relief:

   A. Enjoin Ortner from directly or indirectly offering or providing tax preparation services and soliciting Liberty's customers within twenty-five (25) miles of the boundaries of his former Liberty franchise territories for two years following the entry of any injunction;

   B. Enjoin Ortner from soliciting the employment of his former Liberty employees for a period of two (2) years following the entry of any injunction;

   C. Order Ortner to cease use of Liberty's Confidential Information and Trade Secrets, and to return all Confidential Information and Property of Liberty's that is in his possession or control; and

2. For judgment against Ortner in the amount of at least $9,968.31 plus pre-judgment and post-judgment interest, for amounts due and owing by Ortner to Liberty pursuant to Ortner's outstanding accounts receivable balance;

3. For compensatory and, if applicable, punitive damages arising from Ortner's common law violations;

4. For statutory and punitive damages stemming from Ortner's violation of the DTSA;

5. For a monetary award against Ortner for Liberty's reasonable attorneys' fees and costs, in an amount to be proven at trial;

6. For pre- and post-judgment interest; and

7. For such other relief as the Court deems just and appropriate.

Dated: February 5, 2023                    Respectfully submitted,

                                           */s/ Tyler Tarney*
                                           Tyler Tarney (0089082)
                                           **GORDON REES SCULLY MANSUKHANI, LLP**
                                           41 South High Street, Suite 2495
                                           Columbus, Ohio 43215
                                           T: (614) 917-1953
                                           F: (614) 360-2130
                                           ttarney@grsm.com

                                           *Counsel for JTH Tax LLC d/b/a Liberty Tax Service*

## **VERIFICATION**

Clifford Birnbaum, being duly sworn, deposes and says:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"). I have read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

Dated: February \_\_\_\_, 2023

                                                                                     Clifford Birnbaum
                                                                                     Regional Director for JTH Tax LLC

## VERIFICATION

Clifford Birnbaum, being duly sworn, deposes and says:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"). I have read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

Dated: February 3, 2023

DocuSigned by:

_____
Clifford Birnbaum
Regional Director for JTH Tax LLC